UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTER-INSURANCE AGENCY SERVICES LTD.,

*Plaintiff,*

-against -

CITIBANK, N.A.

*Defendants.*

Index No.: 26-cv-3101

**VERIFIED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Inter-Insurance Agency Services Ltd. ("INTER" or "Plaintiff"), by and through its attorneys, DUNNINGTON BARTHOLOW & MILLER LLP, hereby alleges the matters set forth below upon personal knowledge, except as to matters stated to be alleged upon information and belief, which are believed to be true.

## PRELIMINARY STATEMENT

1. INTER-INSURANCE AGENCY SERVICES LTD. ("INTER"), founded in 1992, is a full-service insurance agency with offices at 405 Lexington Avenue, 26th Floor, New York, New York and at 380 North Broadway #400, Jericho, New York 11753.

2. Timothy Derham ("Derham") is the Chairman and Owner of INTER, Robert Driscoll is the CFO, and Cornelia Senti ("Senti") is the HR manager. Miguel Rodriguez ("Rodriguez") has been working in INTER's Accounting Department since June 2024.

3. INTER brings this action seeking to recover $1,540,000 in funds stolen from INTER's accounts at Citibank due to unauthorized transactions.

4. In a letter dated April 3, 2025, Citibank stated its intent to close all INTER accounts by June 2, 2025, alleging that Citibank had reserved the right to close INTER's accounts at any time, pursuant to the terms and conditions of a "CitiBusiness Client Manual."

5.      Citibank later agreed to maintain INTER's accounts until August 2, 2025.

**THE PARTIES**

6.      INTER is a New York limited liability company duly licensed to engage in the business of property and casualty insurance in New York State with offices at 405 Lexington Avenue, 26th Floor, New York, New York 10174 and at 380 North Broadway #400, Jericho, New York 11753.

7.      Defendant CITIBANK, NA ("Citibank") is, upon information and belief, a national banking association organized and operating under the National Bank Act, 12 U.S.C. §§ 21, et seq. with a main office located at 5800 S. Corporate Place, Sioux Falls, South Dakota.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b). INTER maintains a New York bank account with Citibank at a bank branch in this District, and a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this District.

**FACTS**

10.      On April 17, 2025, Derham received a call from someone claiming to be a Citibank representative, calling from the publicly-listed Citibank number (800) 285-1709. The caller identified himself as "Thomas Grant" and stated that a security token had been sent to an address in Atlanta, Georgia. When Derham indicated he had not authorized any such token and could not reach CFO Robert Driscoll, he added INTER's HR Manger Senti to the call.

11. During the call, the individual calling himself "Thomas Grant" identified INTER's internal information, including signatory identities and Senti's status as a "Level 6 Administrator." "Thomas Grant" convinced Senti to complete a form linked in a text message, which she submitted twice while still on the call. Then "Thomas Grant" gave Senti what he said was a case number (A7824371) and confirmation number (06250818). Senti briefly logged into CitiBusiness Online during the call and saw nothing suspicious.

12. Senti checked INTER's accounts again later that night and discovered various large unauthorized Automated Clearing House ("ACH") transactions from two of INTER's accounts, accounts #5292 and #4866.

13. Three unauthorized ACH withdrawals (for $80,000, $75,000 and $275,000) in the total amount of $430,000.00 occurred at 6:10 p.m. Eastern Time on April 17, 2025. There were two ACH withdrawals (for $825,000 and $285,000) in the amount of $1,110,000.00 that were submitted at 8:50 p.m. Eastern Time on April 17, 2025.

14. According to Citibank's website, "Citibank cut-off time is 8:15 PM (Eastern time) and batches will be processed the following day."

15. On the evening of April 17, 2025, Rodriguez and Senti called Citibank to report the unauthorized transactions. Rodriguez and Senti were transferred between departments and eventually told by a representative named "Mark" that the fraud department had closed for the evening and they would need to call back, which they could do starting at 7:00 a.m. the next morning.

16. Continuing on the evening of April 17, 2025, INTER personnel made a series of additional, urgent calls to Citibank and each other in response to suspected fraud being effectuated against INTER's Citibank accounts.

17.    At 10:25 p.m. on April 17, 2025, INTER's Rodriguez placed an outgoing call to Citibank (1-888-248-4226); that call lasted ten minutes.

18.    On April 17, 2025, at 10:35 p.m., Rodriguez placed a call to Citibank (1-877-528-0990). That call lasted 22 minutes. That call was followed by a 1-minute call at 10:57 p.m. to (877) 528-0990 because Citibank personnel hung up the call that had begun at 10:35 p.m.

19.    On April 17, 2025 at 10:59 p.m., Rodriguez and Senti placed another outgoing call to Citibank (888-248-4226). The call lasted 36 minutes.

20.    These communications reflect a flurry of activity as INTER urgently attempted to notify Citibank and coordinate a response to block the unauthorized transactions.

21.    Although Senti discovered the unauthorized transactions and reported fraudulent activity to a Citibank representative on the evening of April 17, 2025, INTER's Citibank statements reflect that Citibank processed the fraudulent transactions the next day, on April 18, 2025.

22.    Unauthorized ACH debits were processed against two of INTER's Citibank accounts, account #5292 and #4866, as follows:

| | |
|---|---|
| **April 18, 2025, #5292 ACH debits:** | $75,000.00 |
| **See Ex. 1, #5292 Statement Apr. 12-18, 2025** | $80,000.00 |
| | $275,000.00 |
| | <u>$285,000.00</u> |
| | $715,000.00 |

| | |
|---|---|
| **April 18, 2025, #4866 ACH debits:** | $825,000.00 |
| **See Ex. 2, #4866 Statement April 1-April 30, 2025** | |

23.    At 1:07 a.m. and 1:34 a.m. on April 18, 2025, Senti sent two urgent emails to Citibank's service address, identifying the five unauthorized transactions totaling $1,540,000. $825,000.000 was withdrawn from Acct. #4866 in one ACH transaction. $715,000 was withdrawn from Acct. #5292 in four separate transactions.

4

24.     On April 18, 2025, at 7:00 a.m., Senti and Rodriguez placed a 1-hour and 27-minute call to Citibank, tel. (877) 528-0990.  Senti and Rodriguez provided Citibank with a screenshot that Senti captured on the evening of April 17, 2025.

25.     After that call, Citibank officially opened Fraud Case I-250418-EML000728 for the INTER thefts.

26.     This sustained sequence of communications confirms that INTER acted swiftly, in real time, to notify Citibank and escalate the matter through legal channels immediately following discovery of the unauthorized activity in INTER's Citibank accounts.

27.     On the morning of April 18, 2025, Senti spoke to Jason Collins ("Collins"), Citibank's Relationship Manager for Commercial Services, who assured Senti that the issue would be handled expeditiously.

28.     On April 18, 2025, INTER called the police to report the thefts from its Citibank accounts to the police.

29.     Later on April 18, 2025, two Nassau County police officers visited Senti's home and issued Police Report No. 2025CR334800. Detective Rhubens Toussaint of the Nassau County Police Department was later assigned to the investigation.

30.     Citibank advised that on April 18, 2025, it had, in good faith, reversed all fraudulent ACH debits from INTER's accounts, making the following deposits.

| | |
|---|---|
| **April 18, 2025, #5292 electronic credits:** | $75,000.00 |
| **See Ex. 1, #5292 Statement Apr. 12-18, 2025** | $80,000.00 |
| | $275,000.00 |
| | $285,000.00[1] |
| | $715,000.00 |

---

[1] The $285,000 that was withdrawn by criminal actors via ACH on April 18, 2025 was withdrawn from account #4866. The good faith deposit of $285,000 made by Citibank on April 18, 2025 was deposited into a different account, #5292.

**April 18, 2025, #4866 electronic credit:**            $825,000.00
**See Ex. 2, #4866 Statement April 1-April 30, 2025**

31.     Senti worked with Jean-Luc Word ("Jean-Luc"), Treasury Officer at Citibank, to de-link the alleged compromised accounts, #5292 and #4866, and a third account that had not been the subject of fraudulent activity, account #3529.

32.     On April 23, 2025, Citibank set up new business accounts, creating account #4234 to replace #3529, and account #4242 to replace account #5292.

33.     On April 24, 2025, Citibank, not the criminal entity, withdrew a total of $740,000.00 from INTER's original operating account #3529 (the account that had not been the subject of criminal activity), in thirteen separate transactions in the amounts listed in the table appearing below. Each of those transactions was identified as "OTHER WITHDRAWAL/ADJ." See **Exhibit 3** (April 19 - April 25, 2025 Citibank statement for account #3529). Citibank never requested INTER's authority to make those thirteen transactions.

| Account # 3529 Transaction No. | Date | Description | Amount |
|---|---|---|---|
| 1 | 04/24 | OTHER WITHDRAWAL/ADJ | $40,000.00 |
| 2 | 04/24 | OTHER WITHDRAWAL/ADJ | $45,000.00 |
| 3 | 04/24 | OTHER WITHDRAWAL/ADJ | $45,000.00 |
| 4 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |
| 5 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |
| 6 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |
| 7 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |
| 8 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |

| 9 | 04/24 | OTHER WITHDRAWAL/ADJ | $60,000.00 |
| 10 | 04/24 | OTHER WITHDRAWAL/ADJ | $65,000.00 |
| 11 | 04/24 | OTHER WITHDRAWAL/ADJ | $70,000.00 |
| 12 | 04/24 | OTHER WITHDRAWAL/ADJ | $80,000.00 |
| 13 | 04/24 | OTHER WITHDRAWAL/ADJ | $85,000.00 |
| TOTAL DEBITS | | | $740,000.00 |

34.    The withdrawal of $740,000 from account #3529 left that account overdrawn.

35.    On April 24, 2025, Citibank, and not the criminal entity, withdrew $1,005,000.00 from account #5292 (the account from which four fraudulent ACH transfers had been made on April 17, 2025), in fourteen separate transactions in the amounts listed in the table appearing below. Each of those transactions was identified as "OTHER WITHRAWAL/ADJ."  See **Exhibit 4** (April 19 – April 25, 2025 Citibank statement for account #5292). Citibank never requested INTER's authority to make those fourteen transactions.

| Account # 5292 Transaction No. | Date | Description | Amount |
| --- | --- | --- | --- |
| 1 | 04/24 | OTHER WITHDRAWAL/ADJ | $45,000.00 |
| 2 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |
| 3 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |
| 4 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |
| 5 | 04/24 | OTHER WITHDRAWAL/ADJ | $50,000.00 |
| 6 | 04/24 | OTHER WITHDRAWAL/ADJ | $60,000.00 |

| 7 | 04/24 | OTHER WITHDRAWAL/ADJ | $60,000.00 |
|---|---|---|---|
| 8 | 04/24 | OTHER WITHDRAWAL/ADJ | $75,000.00 |
| 9 | 04/24 | OTHER WITHDRAWAL/ADJ | $75,000.00 |
| 10 | 04/24 | OTHER WITHDRAWAL/ADJ | $80,000.00 |
| 11 | 04/24 | OTHER WITHDRAWAL/ADJ | $80,000.00 |
| 12 | 04/24 | OTHER WITHDRAWAL/ADJ | $100,000.00 |
| 13 | 04/24 | OTHER WITHDRAWAL/ADJ | $110,000.00 |
| 14 | 04/24 | OTHER WITHDRAWAL/ADJ | $120,000.00 |
| TOTAL DEBITS | | | $1,005,000.00 |

36.     When INTER opened a new account #4242, to replace account #5292 because the latter was compromised, INTER moved $665,510.50 in funds from account #5292 to account #4242. *See* **Exhibit 5** (April 24 – May 5, 2025 Citibank statement for account #4242). *See also* **Exhibit 6** (May 3 -May 9, 2025 Citibank statement for account #5292).

37.     On May 5, 2025, Citibank transferred $597,128.09 to one of INTER's original accounts, #3529, "to cover [the] overdraft" that Citibank had created by withdrawing $740,000 from account #3529 on April 24, 2025. See **Exhibit 7** (May 3-May 9, 2025 Statement for account #3529).

38.     To make that transfer and cover the overdraft, Citibank withdrew $597,128.09 from account #4242 "to cover OD," and transferred that sum to account #3529 without notifying INTER. *See* **Exhibits 5 and 7.**

39.     On May 6, 2025, Senti discovered Citibank's May 5, 2025 withdrawal of $597,128.09 from one of the new accounts, account #4242, and emailed Collins and Christina

Boggs ("Boggs") at Citibank to ask who authorized that withdrawal, because INTER had not authorized it. *See* **Exhibit 8** (Senti's May 6, 2025 email inquiring about payment of $597,128.09 "utility bill").

40.    On May 19, 2025, Senti emailed Citibank, flagging Citibank's April 24, 2025 transactions to accounts #5292 and #3529. *See* **Exhibit 9** (Senti's May 19, 2025 email). Senti's email reflects that she thought Citibank had frozen those accounts on April 18, 2025.

41.    As of May 19, 2024, INTER's total unrecovered loss due to the thefts by criminal actors stood at $1,540,000 (representing $1,110,000 stolen from account #4866 and $430,000 stolen from account #5292).

42.    On May 20, 2025, Citibank emailed Senti, Derham, and Rodriguez to advise that the fraud investigation had been closed, stating "there are no further funds to recover" and "[a]t this time we will consider the case as resolved." *See* **Exhibit 10** (Citibank's May 9, 2025 email).

43.    On May 28, 2025, Senti emailed Collins to inform him that Citibank had refused INTER's deposits, with Citibank saying INTER's accounts are blocked. *See* **Exhibit 11** (Senti's May 28, 2025 email).

44.    On May 29, 2025 Collins, for Citibank, responded that INTER's Citibank accounts remained active but would be closed by August 2, 2025.  *See* **Exhibit 12** (Citibank's May 29, 2025 email).

## AS AND FOR A FIRST CAUSE OF ACTION
### [Under NY UCC § 4-A-202]

45.    INTER incorporates all preceding paragraphs into this cause of action by reference as though fully restated herein.

46.    Section 4-A-202 of the N.Y. Uniform Commercial Code ("§ 4-A-202) provides in pertinent part, that:

"A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

"If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer will be verified pursuant to a security procedure, a payment order is effective as the order of the customer if that security procedure is a commercially reasonable method of providing security against unauthorized payment orders and the bank proves that it accepted the order in good faith and in compliance with the security procedure…"

47.    The five fraudulent ACH debits at issue that took place on April 17, 2025 were not authorized by INTER or any person with actual or apparent authority to act on INTER's behalf.

48.    The five fraudulent ACH transactions that took place on April 17, 2025 were executed after a fraudster impersonating a Citibank representative induced INTER's HR Manager to complete token reset procedures. The fraudster, not an INTER employee or agent, then used the reset credentials to access INTER's Citibank accounts ending in #5292 and #4866.

49.    The payment orders were not "authorized" within the meaning of § 4-A-202(1) because INTER did not issue them, and no employee with authority approved or ratified them.

50.    Even if Citibank contends it relied on a security procedure, such procedure was not "commercially reasonable" as applied. Citibank did not detect multiple red flags, including an atypical caller initiating a reset, abnormal transaction patterns, large round-dollar transfers to unfamiliar recipients, and the lack of any prior similar transfers.

51.    Citibank also failed to act in good faith, which § 4-A-202 requires in addition to compliance with a commercially reasonable security procedure. It failed to alert INTER or halt the transactions despite obvious warning signs.

52. Because the transactions were not authorized, and because Citibank cannot establish that it complied with commercially reasonable procedures in good faith, the payment orders are not effective as the orders of INTER under § 4-A-202.

53. As a result, INTER is entitled to relief, including a declaration that the payment orders were unauthorized and unenforceable under § 4-A-202, and monetary damages in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION**
**[Under NY UCC § 4-A-203]**

54. INTER incorporates all preceding paragraphs into this cause of action by reference as though fully restated herein.

55. Section 4-A-203(1) of the N.Y. Uniform Commercial Code provides:

> "If a receiving bank accepts a payment order issued in the name of its customer as sender, but the order is not effective as the order of the customer under Section 4-A-202, and the customer did not otherwise authorize the order, the bank may not enforce the liability of the customer for the order unless the bank proves that the order was caused by a person entrusted by the customer with duties related to payment orders or the security procedure, or who obtained access to the order or procedure through the customer."

56. None of the fraudulent transactions initiated on April 17, 2025—including five ACH debits—were caused by any employee, agent, or person entrusted by INTER with authority or credentials relating to payment orders.

57. The payment orders were initiated solely by a third-party fraudster who impersonated a Citibank representative and induced INTER's HR Manager to reset account security tokens. The fraudster exploited Citibank's own customer service protocols to gain access; INTER's systems were not compromised.

58.    The fraudster was never authorized, entrusted, or permitted by INTER to initiate or validate payment orders. No INTER personnel took any action to authorize the debits, nor did any individuals with authority to initiate or validate payments delegate or transfer their powers to the fraudster.

59.    The breach of Citibank's security procedures originated entirely from Citibank's failure to verify the identity of the caller, failure to confirm token resets with senior account signatories, and failure to flag multiple red flags in real-time.

60.    Because INTER did not cause the breach and did not entrust the fraudster with any authority or access, Citibank may not enforce the resulting payment orders against INTER under § 4-A-203.

61.    Citibank's conduct has directly and proximately caused INTER to suffer financial losses in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
### [Under NY UCC § 4-A-204]

62.    INTER incorporates all preceding paragraphs into this cause of action by reference as though fully restated herein.

63.    Section 4-A-204(1) of the N.Y. Uniform Commercial Code provides in pertinent part:

> "If a receiving bank accepts a payment order issued in the name of its customer as sender which is (a) not authorized and not effective as the order of the customer under Section 4-A-202, . . . the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund."

64.    The fraudulent transfers at issue that occurred on April 17, 2025—comprising five ACH debits from INTER's Citibank accounts ending in 5292 and 4866—were not authorized. No officer, employee, or authorized agent of INTER had actual or apparent authority to initiate or approve these payment orders.

65.    The transactions were initiated after a fraudster impersonating a Citibank representative induced INTER's HR Manager to complete token reset procedures. These resets enabled unauthorized access to INTER's account and facilitated the subsequent fraudulent debits.

66.    Citibank failed to detect or prevent these transfers despite numerous red flags, including token resets requested during a spoofed call, highly unusual transaction patterns, round-number international transfers, and a sharp deviation from INTER's historical account activity. These facts should have alerted Citibank that the transfers were unauthorized.

67.    Because the transfers were not authorized under § 4-A-202, and because Citibank cannot establish that it employed commercially reasonable security procedures or acted in good faith, it is required under § 4-A-204(1) to refund the amounts debited from INTER's account, less any amounts already recovered.

68.    To date, Citibank has failed to comply with this statutory obligation. While it initially issued provisional credits, it subsequently clawed back those funds and continues to refuse reimbursement.

69.    As a direct and proximate result of Citibank's violations of U.C.C. § 4-A-204(1), INTER has suffered damages in an amount to be determined at trial.

13

## AS AND FOR A FOURTH CAUSE OF ACTION

### [Alleging Improper Self-Help]

70.    INTER incorporates all preceding paragraphs into this cause of action by reference as though fully restated herein.

71.    On April 24, 2025, Citibank, not the criminal entity, withdrew a total of $740,000.00 from INTER's original operating account #3529 (the account that had not been the subject of criminal activity), in thirteen separate transactions that were each identified as "OTHER WITHDRAWAL/ADJ." Citibank was not authorized to make those thirteen transactions.

72.    Citibank is accountable to INTER for the $740,000.00 that Citibank removed from INTER's account #3529, as Citibank's conduct with respect to those thirteen transactions amounts to unauthorized self-help.

73.    On April 24, 2025, Citibank, and not the criminal entity, withdrew $1,005,000.00 from account #5292 (the account from which four fraudulent ACH transfers had been made on April 17, 2025), in fourteen separate transactions that were each identified as "OTHER WITHRAWAL/ADJ." Citibank was not authorized to make those fourteen transactions.

74.    Citibank is accountable to INTER for the $1,005,000 that Citibank removed from account #5292, as Citibank's conduct with respect to those thirteen transactions amounts to unauthorized self-help.

### PRAYER  FOR RELIEF

`    **WHEREFORE,** INTER prays for relief and entry of judgment as follows:

A.    Awarding judgment against Citibank on all causes of action and awarding compensatory damages in favor of INTER in an amount to be determined at trial, plus interest thereon;

14

B.  Awarding INTER reasonable costs and expenses incurred in this action, including

counsel fees and expert fees; and

C.  Such other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

INTER hereby demands a trial by jury on all issues triable by jury.

Dated: New York, New York
April 15, 2026

Respectfully submitted,

**DUNNINGTON BARTHOLOW & MILLER LLP**

By:  _/s/_____

Raymond J. Dowd
Claudia G. Jaffe
230 Park Avenue 21st Floor
New York, New York 10169
Telephone: 212-682-8811
Facsimile: 212-661-7769
rdowd@dunnington.com
cjaffe@dunnngton.com

*Attorneys for Plaintiff*

15